AO 91 (Rev. 11/11) Criminal Complaint

Eastern District of Kentucky
**FILED**
Sep - 04 2026
Robert R. Carr
Clerk, U.S. District Court

# UNITED STATES DISTRICT COURT

for the

Eastern District of Kentucky

United States of America
v.
Edward Lee Ball

*Defendant(s)*

Case No. 2:26-MJ-2613-CJS

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 3, 2026 in the county of Gallatin in the Eastern District of Kentucky, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 21 U.S.C. § 841(a)(1) | Attempted possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine |

This criminal complaint is based on these facts:

See attached affidavit.

❐ Continued on the attached sheet.

Ryan Malone by CJS w/ permission
*Complainant's signature*

T.F.O. Ryan Malone, DEA
*Printed name and title*

After verifying identity, Complainant swore to the Complaint by telephone, and it was signed for Complainant with consent, the process complying with Federal Criminal Rules 4.1 and 4(d), the Court having received the Complaint and having transmitted the Arrest Warrant, by email.

Signed By:
*Candace J. Smith* CJS
United States Magistrate Judge
*Judge's signature*

Date: 09/04/2026

City and state: Covington, KY

Candace J. Smith, United States Magistrate Judge
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**COVINGTON**

| | |
|---|---|
| **IN THE MATTER OF A CRIMINAL COMPLAINT FOR:**<br><br>**EDWARD LEE BALL** | **Case No. 2:26-MJ-2613-CJS** |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Ryan L. Malone, being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I submit this affidavit in support of a criminal complaint charging Edward Lee Ball (BALL) with attempting to possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), in the Eastern District of Kentucky, on or about September 3, 2026.

2. I am a sworn police officer with the Covington Police Department (CPD) and have been so employed for over 18 years. I have been assigned to the CPD drug unit (D-Team) since 2014; in that time, I have worked as a Covington Housing Officer, street corner narcotics officer, and street level narcotics detective. I have also been assigned to the Northern Kentucky Drug Strike Force and have been employed as a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

3. I am currently a Task Force Officer with the Drug Enforcement Administration's (DEA's) Cincinnati District Office. I have been a DEA TFO since April 2024. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510 (7), that is, an officer of the United States who is empowered by law to conduct

investigations of and make arrests for offenses enumerated in 18 U.S.C. § 2516(1). As a DEA TFO, I investigate violations of 21 U.S.C. §§ 841, 843, 846, and 848. As such, I have participated in multiple investigations that have involved the execution of search warrants, physical and electronic surveillance and interviews of defendants, witnesses, and informants. Based on my training and experience, I am familiar with how individuals distribute and transport controlled substances, and launder and conceal the proceeds thereof.

4. Throughout my career, I have received specialized training focused on various topics including the methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits of the drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture of the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate illicit drug trafficking.

5. I am familiar with the facts and circumstances of this case. The information contained in this affidavit is either personally known to me based upon surveillance, my interviews of various witnesses and review of various records/tracking data and publicly available information or has been relayed to me by other agents or sworn law enforcement personnel. Because this affidavit is provided for the limited purpose of establishing probable cause to support a criminal complaint, I have not included all facts related to this investigation, but rather, I have set forth only those facts that I believe are necessary to establish probable cause for the crime alleged.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that BALL attempted to possess with the intent to distribute 500 grams

or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), in the Eastern District of Kentucky on or about September 3, 2026.

## PROBABLE CAUSE

7. As described more fully below, this investigation revealed that BALL attempted to take possession with intent to distribute approximately 4 kilograms of cocaine on September 3, 2026.

8. On or about September 2, 2026, agents developed a Source of Information (SOI) after that person was found in possession of approximately 4 kilograms of a substance that field tested positive for cocaine hydrochloride. Agents detained and then interviewed the SOI, who advised that the drugs were to be dropped off in Kentucky later that day to a subject that he/she knows as "Man," who, as discussed below, agents determined to be BALL. The SOI advised agents that BALL should be providing $50,000.00 in exchange for the drugs. The SOI was able to provide details of his/her prior interactions with BALL, as well as a physical description of his appearance and vehicle, which the SOI described as a Jaguar. Under the direction and supervision of agents, the SOI conducted a recorded audio call to BALL in which the SOI advised BALL the drugs would not be available until the following day.

9. On September 3, 2026, DEA Special Agent Maggie Reagan and I met with the SOI at a predetermined meeting location. Under the direction and supervision of agents, the SOI conducted a series of telephone communications with BALL to arrange a meetup for the drug transaction. One of the communications was a video call, during which agents observed BALL speaking to the SOI. The SOI also screen-recorded one of his/her video calls with BALL. BALL agreed to meet the SOI for the drug transaction later that day at a restaurant off of Kentucky

Route 227 in Carrollton, Kentucky.

10. DEA agents and Kentucky State Police (KSP) Troopers established physical surveillance in the area of the restaurant prior to the scheduled time of the deal between the SOI and BALL. Agents observed a light blue Jaguar with Kentucky registration WOA-262 traveling northbound on I-71 and then ultimately pull into the parking lot of the restaurant where the SOI and BALL agreed to meet for the drug transaction. BALL parked the vehicle and then engaged in another series of calls with the SOI, during which the SOI indicated he/she was at a different restaurant in Sanders, Kentucky. BALL agreed to meet the SOI at that other restaurant. Following that phone call, agents observed BALL leave the restaurant in the Jaguar, drive back towards I-71, and then enter I-71 northbound towards the new meeting spot. Agents observed BALL travel into Gallatin County, Kentucky on I-71, at which point KSP marked police units conducted a traffic stop after observing BALL traveling 71 mph in a 55-mph speed zone.

11. KSP Troopers made contact with BALL, who was driving the Jaguar. BALL was detained and found to be in possession of a large sum of cash that is believed to be multiple tens of thousands of dollars. After receiving a *Miranda* warning from law enforcement, BALL advised that he wanted to consult with his attorney.

12. On September 3, 2026, agents provided the SOI with a photograph of BALL. The SOI identified the person depicted in that photograph as the drug customer he/she knew as "Man."

## CONCLUSION

18. Based on the above information, I submit that there is probable cause to believe that BALL attempted to possess 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C.

§ 841(a)(1) in the Eastern District of Kentucky on or about September 3, 2026.

Ryan Malone by CJS w/ permission
Ryan Malone
Task Force Officer
United States Postal Inspection Service

Sworn to before me by the Affiant via telephone and subscribed for the Affiant with his consent this 4th day of September, 2026.

**Signed By:**
***Candace J. Smith*** CJS
**United States Magistrate Judge**

## PENALTIES

Not less than 5 years and not more 40 years imprisonment, not more than a $5,000,000 fine, and at least 4 years of supervised release.

**PLUS:** Mandatory special assessment of $100 per count.